IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JAMES EDWARD JOHNSON,

                    Plaintiff,

vs.                                    Case No. 16-4185-SAC


NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a
quantitative exercise, for evidence is not substantial if it is
overwhelmed by other evidence or if it really constitutes mere
conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).
Although the court is not to reweigh the evidence, the findings
of the Commissioner will not be mechanically accepted.  Nor will
the findings be affirmed by isolating facts and labeling them
substantial evidence, as the court must scrutinize the entire
record in determining whether the Commissioner's conclusions are
rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan.
1992).  The court should examine the record as a whole,
including whatever in the record fairly detracts from the weight
of the Commissioner's decision and, on that basis, determine if
the substantiality of the evidence test has been met.  Glenn, 21
F.3d at 984.

     The Social Security Act provides that an individual shall
be determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment
expected to result in death or last for a continuous period of
twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform

their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On April 28, 2015, administrative law judge (ALJ) Michael Comisky issued his decision (R. at 18-32).  Plaintiff alleged that he has been disabled since October 24, 1990 (R. at 18).

Plaintiff was found to be disabled on May 28, 1991. Plaintiff's disability was determined to continue on June 18, 1999 (R. at 18).

On January 25, 2013, defendant notified the plaintiff that it had been determined that his condition was not severe enough to have been considered disabling and the previous determination that he was disabled was being changed. Plaintiff appealed this decision, and the case was heard by the above-listed ALJ (R. at 18). The ALJ issued his decision on April 28, 2015 (R. at 32).

Plaintiff is insured for disability insurance benefits through March 31, 2016 (R. at 21). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 21). At step two, the ALJ found that plaintiff has severe impairments (R. at 21). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 22). After determining plaintiff's RFC (R. at 23-24), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 29). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 30). Reopening of the prior allowance dated May 28, 1991 was found to be supported by fraud having been committed in this case (R. at 31). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 31-32).

The Appeals Council reviewed the ALJ decision, and issued its own decision on November 22, 2016 (R. at 6).  The Appeals Council did not agree with the ALJ that fraud was committed. Rather, the Appeals Council found that plaintiff committed acts of "similar fault" (R. at 6F-6H).  The Appeals Council found that plaintiff's date last insured was September 30, 1993 (R. at 6I, n.2).  At step one, the Appeals Council found that plaintiff engaged in substantial gainful activity beginning on June 16, 2008.  At step two, the Appeals Council found that plaintiff had severe impairments, and at step three found that plaintiff's impairments do not meet or equal a listed impairment.  After determining plaintiff's RFC, the Appeals Council found at step four that plaintiff is unable to perform past relevant work (R. at 6I).  At step five, the Appeals Council found that plaintiff could perform other work that exists in significant numbers in the national economy.  Therefore, the Appeals Council concluded that plaintiff was not disabled based on his application of September 12, 1990 (R. at 6J).

**III.    Did the Appeals Council err in its decision that the disability determination of May 28, 1991 should be reopened because it was obtained by similar fault?**

A decision that a claimant is disabled may be reopened at any time if it was obtained by fraud or similar fault.  20 C.F.R. §§ 404.988(c)(1); 416.1488(c).  Similar fault is defined

as an:  (1) incorrect or incomplete statement that is material
to the determination is knowingly made; or (2) information that
is material to the determination is knowingly concealed.  42
U.S.C. § 405(u)(2); SSR 16-1p, 2016 WL 1029284 at *3; SSR 16-2p,
2016 WL 1029285 at *3.  Material is defined as a statement or
information, or an omission from a statement or information that
could influence the agency in determining entitlement to
benefits.  Knowingly describes a person's awareness or
understanding regarding the correctness or completeness of the
information he or she provides, or the materiality of the
information he or she conceals from the agency.  SSR 16-1p, 2016
WL 1029284 at *4; SSR 16-2p, 2016 WL 1029285 at *4.

   The Commissioner shall disregard any evidence if there is
reason to believe that fraud or similar fault was involved in
the providing of such evidence.  42 U.S.C. § 405(u)(1)(B).  If,
after redetermining entitlement to or eligibility for benefits,
the agency determines that without the disregarded evidence, the
evidence does not support entitlement or eligibility, the agency
may terminate such entitlement or eligibility and may treat
benefits paid based on such evidence as overpayment.  SSR 16-2p,
2016 WL 1029285 at *2; see 42 U.S.C. § 405(u)(3).

   Plaintiff argues that reopening of the determination that
plaintiff was disabled in 1991 is precluded on the basis of res
judicata.  Plaintiff notes that on June 18, 1999, the

Commissioner informed the plaintiff that it had recently reviewed the evidence in his disability claim and had determined that his disability was continuing (R. at 98). Plaintiff contends that this decision to continue disability benefits precludes reopening of the 1991 disability determination (Doc. 14 at 22-23).

Res judicata applies in the social security context when there has been a previous determination or decision about the claimant's rights on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action. Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009); 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1).

However, as noted above, a decision that a claimant is disabled "may be reopened at any time if it was obtained by fraud or similar fault." Good cause for reopening exists if new and material evidence is furnished. 20 C.F.R. § 404.989(a)(1). The Commissioner alleges that new and material evidence which was not available in 1999 justified reopening this case.[2] Thus, this case can be distinguished from the case of Hulett v. Chater, 1997 WL 8026 at *2 (10th Cir. Jan. 10, 1996), in which the Secretary did not allege the existence of any new indices of

---

[2] The Appeals Council relied on 2012 psychological testing from Dr. Neufeld, an investigation by the CDI unit in 2012, and the opinions of Dr. Blum from 2013 (R. at 6G-6H).

fraud that she currently possessed which were unavailable when the Secretary made the prior continuation determinations.

The court will next address the evidence regarding whether the disability determination in 1991 was obtained by similar fault.  Defendant had made an initial determination that plaintiff was not disabled on March 15, 1991 (R. at 33).  This had followed psychological evaluations of November 15, 1990 by Dr. Vandenberg (R. at 196-197), and by Dr. Day on February 12, 1991 (R. at 203-205).  A psychological assessment on March 12, 1991, which reviewed the above evaluations, found that plaintiff had only a slight degree of limitation in 3 functional areas (R. at 213), and a mental RFC assessment of that same date showed moderate limitations in only 3 out of 20 categories (R. at 215-216).

On May 15, 1991, another psychological evaluation was performed by Dr. FitzGerald.  He performed a Wechsler Adult Intelligence (IQ) test, a Benton Visual Retention Test, and a Wechsler Memory Scale test on plaintiff.  The IQ test showed a verbal IQ of 60, a performance IQ of 51 and full scale IQ of 52.  On the Wechsler/IQ test, Dr. FitzGerald noted that plaintiff's performance subscales were affected by time and an inability to comprehend task requirements.  The Benton test was marked by omissions, perseverations, and size errors and was moderately suggestive of organic impairment.  The results of the memory

scale were inconclusive.  Plaintiff was unable or unwilling to complete the subtests and responded repeatedly "I don't know," or "don't remember that."  Dr. FitzGerald concluded that plaintiff was mentally retarded (R. at 219-220).

On May 28, 1991, defendant concluded that plaintiff was disabled as of October 24, 1990 because of mental retardation; plaintiff was found to meet listed impairment 12.05B.  Dr. FitzGerald's report was cited as the basis for deciding plaintiff's claim (R. at 34, 104-105, 224).

Plaintiff submitted to a more recent psychological assessment on November 13, 2012 with Dr. Neufeld (R. at 311-315).  Dr. Neufeld reported the following on the Wechsler/IQ test:

Full scale:  61
Verbal comprehension:  68
Perceptual reasoning:  73
Working memory:        63
Processing speed:      59

(R. at 314).  Dr. Neufeld made the following conclusions:

> …the claimant's self-reported information was unreliable, and level of effort did not appear to remain adequate throughout testing.  Thus, the claimant's self-reported information should be considered with caution, and the test results are likely to underestimate his true level of functioning.

(R. at 311).  He went on to say the following:

> The claimant's overall intellectual functioning fell in the Impaired range, although performance was significantly

> higher than indicated by 1991 test results
> provided upon referral…
>
> His level of effort also did not appear to
> remain adequate throughout testing, and the
> test results likely underestimate his true
> level of functioning…Similarly, because of
> these reasons, the presence of psychological
> difficulties could not be confirmed that
> would preclude his ability to adequately 1)
> understand and remember simple instructions;
> 2) sustain concentration, persistence and
> pace in a work setting; or 3) maintain
> appropriate social interactions with
> coworkers, supervisors, and the general
> public.

(R. at 315).

Dr. Cannon, plaintiff's treating psychiatrist, stated on June 24, 2014 that plaintiff had "**no cognitive impairments**, insight and judgment good" (R. at 416, emphasis added). On July 22, 2014, he stated that, in regards to plaintiff, that "All memory functions were intact. Abstraction ability fair. Fund of knowledge fair. Vocabulary fair. **Intellect as assessed by vocabulary, fund of knowledge, and abstraction ability seems in the average range**" (R. at 419, emphasis added).

Defendant also considered an investigative report on the defendant dated November 15, 2012 (R. at 318-330). It indicates that plaintiff received unemployment compensation in 2009; in order to receive unemployment compensation, plaintiff reported to the state that he was ready, willing and able to work (R. at 324). Despite stating to Dr. Neufeld on November 13, 2012 that

11

he did not drive because he did not have a vehicle (R. at 312),
he was observed driving on that same day (R. at 325).  Plaintiff
admitted that he had purchased a vehicle (R. at 327).  The car
had been registered on October 6, 2011 (R. at 328).

Finally, defendant had before it reports from Dr. Robert
Blum, a psychologist, dated January 16 and 23, 2013 (R. at 335-
336, 354-356).  Dr. Blum reviewed the record, including the
psychological evaluation from Dr. Neufeld, and the investigative
report.  Dr. Blum specifically noted a letter written by
plaintiff in 1992, which showed no indications of functioning in
the low average range (R. at 354), hospital records from 1996
that did not mention intellectual limitations (R. at 354), and
an evaluation in 1987 that did not mention below normal
intellectual functioning (R. at 355).  After reviewing the
record, Dr. Blum concluded as follows:

> The above material is not consistent with an
> individual who has moderate or very likely
> mild MR [mental retardation].  Functionally
> he does not meet the capsule definition of
> mild MR.  **We know of no condition the
> claimant was documented to possess in 1991
> that would have reduced his performance on
> tests at CPD in 1991 and then would have
> allowed it to improve sometime later
> including the present**.  This leads to the
> assumption that the claimant was functioning
> above the mild MR range at the time he was
> tested.

(R. at 355, emphasis added).  Dr. Blum reviewed earlier
evaluations form Dr. Day, Dr. FitgGerald, and Dr. Vandenberg,

12

and gave them little or no weight, or found that their
conclusions were not valid (R. at 356).  Dr. Blum went on to
state:

> In conclusion the above does not provide
> convincing evidence of any intellectual
> limitations…As a result of the above
> information the only established diagnoses
> would be depression apparently in partial
> remission and history of alcohol abuse and
> cocaine abuse.  These would be nonsevere
> limitations.

(R. at 356).  Dr. Blum filled out a psychiatric review technique
form stating that from July 1, 1991 to January 23, 2013,
plaintiff did not have a severe mental impairment (R. at 339),
and he had only mild functional limitations in activities of
daily living, social functioning, and concentration, persistence
and pace (R. at 349).

The Appeals Council, after reviewing the evidence, stated
that plaintiff's underperformance on psychological testing in
1991 (with Dr. FitzGerald), which was the material factor in
finding plaintiff disabled, was knowingly done when viewed in
the context of the entire record, and constitutes "similar
fault" by a preponderance of the evidence.  The Council
therefore disregarded the evaluation by Dr. FitzGerald (Exhibit
10F) and the assessment by a consultant that plaintiff's
impairment met the severity of listing 12.05B (mental
retardation or intellectual disorder) (Exhibit 11F) (R. at 6H).

13

As noted above, "similar fault" is defined as either an incorrect or incomplete statement that is material to the determination is knowingly made, or information that is material to the determination is knowingly concealed.  Material is defined as a statement or information, or omission from a statement or information that could influence the agency in determining entitlement to benefits.  Knowingly describes a person's awareness or understanding regarding the correctness or completeness of the information he or she provides, or the materiality of the information he or she conceals from the agency.  The Commissioner shall disregard any evidence if there is reason to believe that similar fault was involved in the providing of such evidence.  The Appeals Council concluded that plaintiff's underperformance on the psychological testing in 1991 was a material factor in finding plaintiff disabled, and it was knowingly done, when viewed in the context of the entire record.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must

14

affirm if, considering the evidence as a whole, there is
sufficient evidence which a reasonable mind might accept as
adequate to support a conclusion).

A similar fault finding can be made only if there is reason
to believe, based on a preponderance of the evidence, the person
knew that the evidence provided (or withheld) was false or
incomplete.  A similar fault finding cannot be based on
speculation or suspicion.  SSR 16-2p; 2016 WL 1029285 at *4.

On the Benton visual retention test, Dr. FitzGerald noted
omissions and perseverations by the plaintiff, which was
moderately suggestive of organic impairment (R. at 219).  Dr.
FitzGerald also noted that on the memory scale test, plaintiff
was unable or unwilling to complete the subtests (R. at 219).

In 2012, Dr. Neufeld found that plaintiff's IQ was
significantly higher than that found by Dr. FitzGerald in 1991.
Dr. Neufeld stated that plaintiff's self-reported information
was unreliable, and his level of effort did not appear to remain
adequate throughout testing.  Therefore, Dr. Neufeld stated that
the test results are likely to underestimate his true level of
functioning (R. at 311, 315).  The Appeals Council noted the
omissions and the unwillingness or inability to complete tests
other than the IQ test done by Dr. FitzGerald in 1991 (R. at
6G).  Although Dr. FitzGerald did not raise questions above
plaintiff's performance on the IQ test, his observations on the

other tests can reasonably be taken into account in light of the findings by Dr. Neufeld in 2012 that plaintiff's information was unreliable and that his level of effort did not appear to remain adequate throughout testing; therefore, the test results likely underestimated his true level of functioning.

Dr. Blum stated that the material in the record was not consistent with an individual who is mentally retarded, as found by Dr. FitzGerald.  Dr. Blum was aware of no condition by the claimant in 1991 that would have reduced his performance on the IQ tests, and that would have allowed it to improve when tested in 2012.  Therefore, Dr. Blum assumed that plaintiff was in fact functioning above the mentally retarded range in 1991 when he was tested by Dr. FitzGerald (R. at 355).

The court will not reweigh the evidence.  The only issue is whether a reasonable factfinder could conclude that a preponderance of the evidence demonstrated that plaintiff knowingly underperformed on the IQ testing in 1991. Significantly, Dr. Blum stated that he was aware of "no" condition possessed by the plaintiff that would explain the lower scores in 1991, and that would explain why those scores improved when tested in 2012.  His conclusion is that plaintiff was functioning above that range in 1991.  Dr. Blum's findings were based on his evaluation of the entire record, including the 2012 investigation report, the 2012 evaluation by Dr. Neufeld,

and other portions of the record from 1987, 1992 and 1996, which, in his opinion, would not support below normal intellectual limitations, as set forth above.  Dr. Blum also set forth why he disregarded the opinions of Dr. Day, Dr. FitzGerald, and Dr. Vandenberg.  Based on his review of the evidence, Dr. Blum concluded that plaintiff did not have a severe mental impairment from 1991 through 2012.

Also relevant is information noted by the ALJ in his opinion.[3]  The ALJ noted the opinions of Dr. Cannon, plaintiff's treating psychiatrist.  In 2014, Dr. Cannon indicated that plaintiff's intellect was in the average range (R. at 27, 416, 419).

After considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion that plaintiff's underperformance on the testing in 1991 was a material factor in finding plaintiff disabled, and that it was knowingly done.  The Appeals Council finding of "similar fault" by the plaintiff is supported by substantial evidence.

**IV.  Did the Appeals Council err in its consideration of plaintiff's statements and behavior?**

---

[3] The Appeals Council disagreed with the ALJ that plaintiff had committed fraud, only finding that plaintiff had committed similar fault, but the Appeals Council adopted the ALJ's finding that plaintiff was not disabled  (R. at 6E).  The Appeals Council had before it the ALJ's summary of the evidence, including the findings of Dr. Cannon.

Defendant issued a new regulation, SSR 16-3p, 2016 WL 1119029, with an effective date of March 28, 2016.  2016 WL 1237954, 2017 WL 5180304.  It rescinded SSR 96-7p.  It eliminated the use of the term "credibility" from the agency policy.  It sought to more closely follow regulatory language regarding symptom evaluation.  2016 WL 1119029 at *1.  It calls for a review of the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects.  2016 WL 1119029 at *9.  The agency must limit their evaluation to the claimant's statements about his or her symptoms and the evidence in the record that is relevant to the claimant's impairments.  In evaluating an individual's symptoms, the agency will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.  Rather, the agency will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the agency's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.  2016 WL 1119029 at *10.

This new SSR ruling went into effect after the ALJ decision, but prior to the Appeals Council decision.[4]  Therefore, the court's focus is on the Appeals Council decision.  That decision must be considered in light of the fact that in this case defendant had to determine if plaintiff engaged in fraud or similar fault when he was found to be disabled in 1991.  This court has found that there is sufficient evidence from which a reasonable mind might accept as adequate to support a conclusion that plaintiff's underperformance on the testing in 1991 was a material factor in finding plaintiff disabled, and that it was knowingly done.  Therefore, the Appeals Council finding of "similar fault" by the plaintiff is supported by substantial evidence.  That finding, by implication, requires a determination of plaintiff's truthfulness insofar as his performance on the IQ testing in 1991 and in 2012.  A finding of similar fault can only be made if there is reason to believe that, based on a preponderance of the evidence, the person committing the fault knew that the evidence provided was false or incomplete.  SSR 16-2p, 2016 WL 1029285 at *3.

The decision of the Appeals Council in finding that plaintiff engaged in similar fault relied on the medical/psychological reports, as set forth above, particularly

---

[4] The ALJ decision was dated April 28, 2015, and therefore reasonably relied on SSR 96-7p, then in effect (R. at 27-28).  The Appeals Council decision, dated November 22, 2016, was issued after the effective date of SSR 16-3p, which became effective on March 28, 2016.  2017 WL 5180304 at *1.

giving great weight to the opinions of Dr. Blum, who had examined the entire record.  The Appeals Council made its decision in accordance with the statute, regulations, and SSRs regarding similar fault.  The balance of the Appeals Council's analysis of plaintiff's statements and behavior as they relate to the question of similar fault and plaintiff's RFC was not based on an examination of plaintiff's overall character or truthfulness, but was an evidence-based analysis of the administrative record, SSR 16-3p, 2016 WL 1119029 at *10, 12 n.1, supported by substantial evidence in the record.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

**V.  Did the Appeals Council err in finding that plaintiff is not disabled?**

A similar fault finding does not constitute complete adjudicative action in any claim.  A person may still be found entitled to, or eligible for, monthly benefits despite the fact that some evidence in the case record has been disregarded based on similar fault.  A person may be found to be under a disability based on impairments that are established by evidence

that is not disregarded because of similar fault.  SSR 16-2p,
2016 WL 1029285 at *4.

The Appeals Council found that plaintiff engaged in
substantial gainful activity in 2008.  At steps two and three,
the Appeals Council found that plaintiff had severe impairments,
but that those impairments did not meet or equal a listed
impairment.  After determining plaintiff's RFC, the Appeals
Council found at step four that plaintiff could not perform past
relevant work (R. at 6I).  At step five, the Appeals Council
found that plaintiff can perform other work that exists in
significant numbers in the national economy.  Therefore, the
Appeals Council found that plaintiff was not disabled (R. at 6I-
6J).

**A.  Did the Appeals Council err by failing to consider the
1991 evaluation by Dr. Day?**

On February 12, 1991, Dr. Day prepared an evaluation of the
plaintiff (R. at 203-205) in which he concluded that plaintiff's
"ability to sustain concentration over an 8 hour day with
routine activities might be limited at this time…He does not
appear reliable in keeping a work schedule, meeting average
performance demands" (R. at 205).  An ALJ must evaluate every
medical opinion in the record.  Hamlin v. Barnhart, 365 F.3d
1208, 1215 (10th Cir. 2004).  Although the Appeals Council
decision did not mention this evaluation by Dr. Day, the Appeals

Council adopted the ALJ's finding that plaintiff had not been disabled since October 24, 1990 (R. at 6F).  The ALJ decision, in finding that plaintiff was not disabled, specifically discussed the opinions of Dr. Day (R. at 25).  Furthermore, the Appeals Council gave "great weight" to the opinions of Dr. Blum (R. at 6H).  Dr. Blum, on January 23, 2013, discussed the evaluation by Dr. Day, and in light of the other material, Dr. Blum gave "little weight" to the conclusions of Dr. Day (R. at 356).  On these facts, the court finds no error by the Appeals Council in its consideration of the opinions of Dr. Day.

**B.  Did the ALJ err by failing to elicit a reasonable explanation form the vocational expert (VE) for discrepancies with the testimony of the VE and the Dictionary of Occupational Titles (DOT)?**

In his decision, the Appeals Council included in plaintiff's RFC that he was limited to "understand, remember and carry out simple instructions" (R. at 6I).  The Appeals Council adopted the testimony of the VE that an individual with plaintiff's RFC could perform the jobs of lamination assembler, linen room attendant and counter supply worker (R. at 6J).  The jobs of lamination assembler and counter supply worker require a reasoning level of 2.  A reasoning level of 2 requires the ability to "apply commonsense understanding to **carry out detailed but uninvolved written or oral instructions.**"  1991 WL

672772, 1991 WL 679636 (emphasis added).[5]  The job of linen room attendant requires a reasoning level of 3.  A job with the reasoning level of 3 requires the ability to apply commonsense understanding to carry out instructions furnished in various forms.  1991 WL 672098.[6]  By contrast, a job with a reasoning level of 1 requires the ability to apply commonsense understanding to carry out simple one or two step instructions.  1991 WL 679273.  Thus, a conflict exists between the RFC finding that plaintiff is limited to understanding, remembering and carrying out "simple" instructions, and the DOT indication that all 3 jobs require the ability to carry out "detailed" instructions.

In the case of Hackett v. Barnhart, 395 F.3d 1168, 1175 (10th Cir. 2005), the court cited to Haddock and SSR 00-4p, and found that there was no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered an explanation for the conflict.  An ALJ must inquire about and resolve any conflicts between the VE testimony and the description of that job in the DOT.  Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009).  In three cases in which plaintiff was limited by not being able to understand, remember or carry

---

[5] DOT 726.687-026, 1991 WL 679636; DOT 319.687-010, 1991 WL 672772.  In the case of Paulek v. Colvin, 662 Fed. Appx. 588, 594 (10th Cir. Oct. 3, 2016), the court cited to the case of Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997), which held that a limitation to simple instructions is inconsistent with both level 2 and level 3 reasoning.

[6] DOT 222.387-030, 1991 WL 672098.  A limitation to simple work is inconsistent with the demands of level 3 reasoning.  Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005).

out detailed instructions, and the jobs identified required
level 2 or level 3 reasoning, Tate v. Colvin, Case No. 15-4870-
SAC (D. Kan. Sept. 7, 2016; Doc. 22 at 19-20); Crabtree v.
Colvin, Case No. 14-2506-SAC (D. Kan. Dec. 28, 2015; Doc. 15 at
8-9), and MacDonald v. Colvin, 2015 WL 4429206 at *8 (D. Kan.
July 20, 2015), the court held that such a conflict must be
explained.  In the case of Pemberton v. Berryhill, Case No. 16-
2501-SAC (D. Kan. April 26, 2017; Doc. 15 at 6-7), the court
held that when a claimant was limited to simple work, and the
jobs identified required a reasoning level of 2 or 3, the
conflict must be explained.  Therefore, the court must reverse
the decision of the Commissioner, and remand to allow the
Commissioner to address the apparent conflict between
plaintiff's limitation to understanding, remembering and
carrying out simple instructions, and the identification of jobs
that require the ability to carry out detailed instructions.

**C.  Should plaintiff have been found disabled based on 20
C.F.R. § 1562(b)?**

20 C.F.R. § 1562(b) states as follows:

> *If you are at least 55 years old, have no
> more than a limited education, and have no
> past relevant work experience.*  If you have
> a severe, medically determinable
> impairment(s), are of advanced age (age 55
> or older), have a limited education or less,
> and have no past relevant work experience
> (see § 404.1565), we will find you disabled.
> If the evidence shows that you meet this

> profile, we will not need to assess your
> residual functional capacity or consider the
> rules in appendix 2 to this subpart [some
> citations to specific regulations defining
> terms omitted].

20 C.F.R. § 404.1565(a) states that work experience applies when

it was done within the last 15 years, lasted long enough for the

claimant to learn to do it, and was substantial gainful

activity.  Plaintiff argues that plaintiff meets this criteria

and should therefore be found to be disabled.

The Appeals Council found that plaintiff has severe

impairments, is now of advanced age [plaintiff turned 55 on

Sept. 30, 2011], has a limited education, but had past relevant

work as a home health aide (R. at 6I).  Plaintiff cites to a

portion of SSR 82-63, which states:

> Generally, individuals are considered as
> having no recent and relevant work
> experience when they have either performed
> no work activity within the 15-year period
> prior to the point at which the claim is
> being considered for adjudication, or the
> work activity performed within this 15-year
> period does not (on the basis of job
> content, recency, or duration) enhance
> present work capability.

SSR 82-63, 1982 WL 31390 at *4.  Plaintiff contends plaintiff's

job in 2008 as a home health aide did not enhance his present

work capability and that he never learned to do the job (Doc. 14

at 25-26).

The Appeals Council found that plaintiff's work in 2008 constituted substantial gainful activity (R. at 6F). However, the Appeals Council did not discuss the regulation or the SSR in question (20 C.F.R. § 404.1562(b); SSR 82-63). More specifically, the Appeals Council did not address the issues of whether the job lasted long enough for the plaintiff to learn to do the job, or whether this work activity enhanced plaintiff's present work capability. Because this case is being remanded, and because of the fact that the court will generally not engage in the task of weighing evidence in the first instance, Clifton v. Chater, 79 F.3d 1007 at 1009; Neil v. Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998), this issue shall be addressed by the Commissioner on remand.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 20th day of December 2017, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge